**James DAYTON and Gwen Dayton, husband and wife, Plaintiffs,**

v.

**The BOEING COMPANY, Defendant.**

**Civ. No. 3198.**

United States District Court,
D. Montana,
Great Falls Division.

Feb. 11, 1975.

C. L. Overfelt, Great Falls, Mont., Jack R. Harper, Helena, Mont., for plaintiffs.

Alexander, Kuenning, Miller & Ugrin, Great Falls, Mont., for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

The question, submitted upon an agreed statement, is whether by reason of workmen's compensation and occupational disease coverage plaintiff may maintain this action.

Plaintiff James Dayton (Dayton) seeks damages for injuries sustained by him as a result of his exposure to electromagnetic pulses and laser radiations while employed by the defendant. His wife, Gwen Dayton, seeks damages for loss of consortium.

Dayton was employed in Montana from 1968 to October 18, 1971, and in Missouri from about October 18, 1971, to June 16, 1972. The major part of the exposure took place in Montana. The defendant was covered under the workmen's compensation laws and occupational disease laws of both Montana and Missouri and defends this action on the ground that Dayton's remedies are under those laws and are exclusive.

■ It is unnecessary to decide whether what happened to Dayton could be deemed to be an industrial accident in the absence of an occupational disease law. The Montana legislature obviously endeavored to distinguish between accidents and occupational diseases, and Dayton does suffer from an industrial disease as distinguished from an accident.[1] *See* Summer v. Victor Chemical Works, 298 F.2d 66 (9th Cir. 1961).

■ It is Dayton's position that, since he was only partially disabled, no compensation was payable to him under R.C.M.1947 § 92–1322 [2] and that his common-law remedies are not barred by R.C.M.1947 §§ 92–1308 and 92–1331.[3] The language of § 92–1308 makes the remedy of the occupational disease law exclusive and would, without more, bar the common-law remedies. Any possible confusion as to the effect of § 92–1331 on § 92–1308 is resolved, so far as this

---

1. Laws of Montana (1971) Ch. 41; R.C.M. 1947 § 92–1304 (pocket part), which reads: "The term 'occupational disease' shall mean all diseases arising out of or contracted from and in the course of employment."

2. "92–1322. *No compensation for partial disability.* No compensation as provided in section 92–1321 shall be payable to an employee who is partially disabled from an occupational disease."

3. "92–1308. *Right to compensation exclusive remedy.* The right to recover compensation pursuant to the provisions of this act for occupational diseases sustained by an em-

ployee and arising out of and in the course of his employment, whether resulting in death, or not, shall be the exclusive remedy therefor against the employer electing to be bound by and subject to this act, except as to such employees as shall reject this act as provided herein."

"92–1331. *Rights of suit at common law.* There shall be no common-law right of action for damage from occupational disease against an employer who elects to come under the provisions of this act, excepting for those employees not eligible for compensation under the terms of this act, or who reject coverage of this act."

court is concerned, by the decision of the Supreme Court of Montana in Anaconda Co. v. District Court, 161 Mont. 318, 506 P.2d 81 (1973), which in this, a diversity case, is controlling. The result of that decision is that an employee suffering an occupational disease has no common-law remedy against the employer if the disease is covered by the Act, and both the employer and employee are bound by the Act. It is not requisite to the bar that in a particular situation the employee be entitled to benefits.

 The disease suffered by the plaintiff here is clearly covered by the Workmen's Compensation Law of Missouri. V.A.M.S. § 287.067–1.[4] However, § 287.067–3 defines the term "radiation disability"[5] and Dayton urges that:

Electro-magnetic pulses is neither radioactive, nor x-rays, nor is it ionizing radiation. The Missouri legislature has seen fit to explicitly define certain types of radiation injury. Since electro-magnetic pulses are not within that definition, James Dayton's injuries are not afforded coverage by the Occupational Disease Act.

—Plaintiff's reply brief, p. 7

There is no suggestion in the language of § 287.067–3 that its purpose is to limit the kinds of radiation diseases which are compensable, and it would be diffi-cult to find any purpose in covering one kind of radiation disability and not another. § 287.063–5 provides that in the case of "radiation disability" as distinguished from other disabilities liability falls on the last employer only if the employee had been employed by him a period of 90 days or more. The purpose of § 287.067–3 is simply to make meaningful the term "radiation disability" as used in § 287.063–5.

 It is likewise urged that, since no benefits are paid for partial disability under the Missouri law, the provisions of § 287.120–2:

The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter . . .

do not apply. Dayton misapprehends the Missouri law. Occupational disease coverage was added to the Missouri Workmen's Compensation Law by amendment and became an integral part of it. While some ambiguities were created by the failure of the legislature to accommodate the language of the then existing compensation law to the new oc-

4. "In this chapter the term 'occupational disease' is hereby defined to mean a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the said diseases follow as an incident of an occupational disease as defined in this section. A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind upon consideration of all the circumstances a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be inci-dental to the character of the business and not independent of the relation of employer and employee. The disease need not to have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence." V.A.M.S. § 287.067–1. All references to Missouri law are to Vernon's Annotated Missouri Statutes.

5. "Radiation disability is recognized as an occupational disease for purposes of this chapter and is hereby defined to be that disability due to radioactive properties or substances or to Roentgen rays (X-rays) or exposure to ionizing radiation caused by any process involving the use of or direct contact with radium or radioactive properties or substances or the use of or direct exposure to Roentgen rays (X-rays) or ionizing radiation." V.A.M.S. § 287.067–3.

**436**

cupational disease coverage, the Missouri courts have made it clear that, unless the context requires otherwise, the contraction of an occupational disease lies within the definition of the word "accident" and damages suffered result from an "injury." Staples v. A. P. Green Fire Brick Co., 307 S.W.2d 457 (Sup.Ct. of Mo., En Banc (1957)); Marie v. Standard Steel Works, 319 S.W.2d 871 (Sup.Ct. of Mo., En Banc (1957)). Dayton's partial disability was compensable under § 287.180 if temporary and under § 287.190 of permanent. *See* Banks v. Krey Packing Co., 479 S.W.2d 188 (Mo.Ct. of Appeals, St. Louis District (1972)), affirming an award for permanent partial disability to the victim of an occupational disease.

In any event, Dayton's argument founders on § 287.120–2, which bars the common-law remedy. *See* Marie v. Standard Steel Works, *supra*; King v. Monsanto Chemical Co., 256 F.2d 812 (8th Cir. 1958).

It is therefore ordered that the plaintiffs be denied all relief.

Let judgment be entered accordingly.