No. 02-551

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 78

CLARK DYESS and HEIDI DYESS,

Plaintiffs and Appellants,

v.

MEAGHER COUNTY, d/b/a
MEAGHER COUNTY AMBULANCE,
a political subdivision,

Defendant and Respondent.

APPEAL FROM: District Court of the Fourteenth Judicial District,
In and for the County of Meagher, Cause No. DV 2001-23
The Honorable Randal I. Spaulding, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

John C. Doubek, Small, Hatch, Doubek & Pyfer, Helena, Montana

For Respondent:

Norman H. Grosfield, Utick & Grosfield, Helena, Montana

Submitted on Briefs: December 19, 2002

Decided: April 10, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Appellants Heidi Dyess (Heidi) and Clark Dyess (Clark), appeal an order of the Fourteenth Judicial District Court, Meagher County, granting summary judgment to the Respondent Meagher County (the County). We reverse and remand for further proceedings.

¶2 We address the following issue on appeal: Did the District Court err in concluding that the definition of employee under § 39-71-118(1)(g), MCA, includes an unpaid Emergency Medical Technician (EMT) trainee on an ambulance for purposes of workers' compensation coverage?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶3 The facts underlying this issue are not in dispute. In October 2000, Heidi enrolled in an EMT-training course offered by the County through its Ambulance Service. One of the course requirements included participation in at least 10 hours of work-based learning activities on an ambulance. Although Heidi was taking the course, she was not under a contract of employment and was not working under any condition that she would receive a job upon completion of the program. Further, Heidi was not receiving any wages as part of the course. Finally, while Heidi was on the ambulance, she never actually took part in providing services to anyone.

¶4 On January 25, 2001, Heidi was performing this course requirement when the ambulance was involved in an auto accident. During this accident, Heidi sustained significant injury to her body, including her back, neck, and head.

2

¶5     After the accident, the County presented Heidi with a W-4 which she signed.  In addition, the County had Heidi submit a First Report of Occupational Injury, the paperwork necessary in order to receive workers' compensation insurance coverage.  The County's workers' compensation insurance provider assumed liability based on this documentation and provided Heidi with various disability benefits, including wage loss compensation and medical payments.

¶6     Subsequently, Heidi brought suit against the County alleging negligence by the driver of the ambulance and seeking compensation for her damages.  In addition, Clark, Heidi's husband, brought a derivative action for damages based on Heidi's accident.  The County moved for summary judgment asserting that Heidi's exclusive remedy was through workers' compensation coverage.  The District Court concluded that Heidi qualified as an employee under the workers' compensation statutes and therefore, granted summary judgment to the County.  Heidi and  Clark now appeal.

## II. STANDARD OF REVIEW

¶7     We review a grant of summary judgment *de novo*.  *Grenz v. Fire & Cas. of Conn.*, 2001 MT 8, ¶ 10, 304 Mont. 83, ¶ 10, 18 P.3d 994, ¶ 10.  We also review a trial court's conclusions of law to determine whether those conclusions are correct.  *Grenz*, ¶ 10.

## III. DISCUSSION

¶8     **Did the District Court err in concluding that the definition of employee under § 39-71-118(1)(g), MCA, includes an unpaid EMT trainee on an ambulance for purposes of workers' compensation coverage?**

¶9     While we have frequently interpreted parts of § 39-71-118, MCA, the statute defining

3

who is an employee for purposes of the workers' compensation laws, we have not had occasion to interpret subsection (1)(g). This subsection reads:

> The term "employee" or "worker" means: . . . (g) a person who is an enrolled member of a volunteer fire department, as described in 7-33-4109, or a person who provides ambulance services under Title 7, chapter 34, part 1.

Therefore, the issue in this case is whether Heidi, an unpaid EMT trainee, qualifies as "a person who provides ambulance services under Title 7, chapter 34, part 1." Since interpretation of this statute is an issue of first impression, there is no interpretive case law.

¶10 Heidi asserts that the District Court erred in concluding that her presence on the ambulance as an EMT trainee fit the definition under subsection (g). In contrast, the County argues that the court properly concluded that Heidi was a person providing ambulance services.

¶11 In its order granting summary judgment to the County, the District Court held that Heidi was an employee under § 39-71-118(1)(g), MCA, because "at the time of the accident in question, Ms. Dyess was a part of that [ambulance] service." The court also noted that the Montana Association of Counties maintains a self insurance fund known as the Workers' Compensation Trust, in part for the payment of workers' compensation insurance coverage for county ambulance services. This trust categorizes all county ambulance personnel as employees and requires counties to include EMT trainees on a counties' payroll report. As Heidi was listed on the first quarterly payroll report issued after the accident, the court concluded that Heidi was an employee under the statute.

¶12 As mentioned, we have never before interpreted subsection (g). However, after

4

reviewing § 39-71-118, MCA, and the related statutes, we hold as a matter of law that the District Court erred in concluding that Heidi qualified under the statute. As noted above, the pertinent facts in this case are not in dispute. While the parties disagree on whether Heidi would have actually performed any activities on the ambulance had it encountered an emergency, we do not consider this disputed fact dispositive. Rather, the issue here is whether any unpaid EMT trainee who has not yet been certified qualifies as an employee under § 39-71-118(1)(g), MCA.

¶13     In order to determine whether an EMT trainee is "a person who provides ambulance services under Title 7, chapter 34, part 1," we must first interpret the plain language of the statute itself. *Kottel v. State*, 2002 MT 278, ¶ 9, 312 Mont. 387, ¶ 9, 60 P.3d 403, ¶ 9. Title 7, chapter 34, part 1 simply authorizes the governing body of a city, town, or county to establish an ambulance service. Specifically, § 7-34-101, MCA, authorizes ambulance services; § 7-34-102, MCA, permits a mill levy for ambulance services; § 7-34-103, MCA, allows the authorizing government entity to operate the ambulance service itself or contract out; and § 7-34-104, MCA, declares that the provisions of part 1 do not apply on March 14, 1961. Therefore, Title 7, chapter 34, part 1 does not establish any requirements for EMT's relevant to the definition of persons providing ambulance service, as these provisions don't refer to employees at all, much less trainees. However, Title 50, chapter 6, governs licensing of ambulance services and sets minimum requirements for quality, safety, and proper operation of emergency medical services in Montana. *See* Title 50, chapter 6, part 3, Part Compiler's Comments; § 50-6-301, MCA. Therefore, for purposes of defining "ambulance

5

service" in the workers' compensation statute at issue here, the definition of ambulance service found in Title 50, chapter 6 is applicable.

¶14 The Compiler's Comments to § 50-6-301, MCA, indicate that the phrase "emergency medical service" was substituted for "ambulance service." Accordingly, § 50-6-302(4), MCA, which defines "emergency medical service," effectively defines an "ambulance service" as "a prehospital or interhospital emergency medical transportation or treatment service provided by an ambulance or nontransporting medical unit."

¶15 Regarding the operation of such services, § 50-6-306, MCA, requires a license be obtained from the state of Montana through the Department of Public Heath and Human Services (DPHHS). *See* § 50-6-306(1), MCA ("A person may not conduct or operate an emergency medical service without first obtaining a license from the department."). Further, § 50-6-323, MCA, authorizes DPHHS to develop administrative rules for obtaining a license to operate an ambulance service, including specific personnel requirements. *See* § 50-6-323(4)(c), MCA (DPHHS shall develop "minimum licensing standards for each type and level of service, including requirements for personnel."); *see also* ARM Emergency Medical Services: Title 16, chapter 30, subchapters 1-8 renumbered at ARM Title 37, chapter 104, subchapters 1-8.

¶16 Finally, specific to the issue in this case, the license requirements for ambulance service personnel require that any provider of medical services on an ambulance be authorized by law to provide services. Specifically, Rule 37.104.213(1)(a), ARM, requires that "[a]ll personnel functioning on the emergency medical service must have current

6

certificates, licenses, proof of training or evidence of legal authorization to function, or a temporary work permit for a given level of certification or licensure." *See also* Rule 37.104.213(1)(c), ARM ("Emergency medical services personnel may use only that equipment and perform those skills for which they are trained, certified, or licensed and legally permitted to use."); Rule 37.104.101(10) and (39), ARM; § 50-6-202, MCA. This definition of authorized personnel does not include an EMT trainee. Therefore, by virtue of the statutes under Title 50 and the rules promulgated by DPHHS thereunder, an EMT trainee who has not yet received certification to provide medical services is not authorized by state law as a "person who provides ambulance services." Accordingly, we hold that an unpaid EMT trainee is not included within the definition of employee under § 39-71-118(1)(g), MCA.

¶17 This interpretation of the plain language in subsection (1)(g) is consistent with the plain language of the other definitions of employee in § 39-71-118, MCA, as well. For example, regarding volunteers, subsection (2) specifically states that volunteers are not considered employees. *See* § 39-71-118(2)(c), MCA ("The terms defined in subsection (1) do not include a person who is: . . . performing services as a volunteer, except for a person who is otherwise entitled to coverage under the laws of this state. As used in this subsection (2)(c), 'volunteer' means a person who performs services on behalf of an employer, as defined in 39-71-117, but who does not receive wages as defined in 39-71-123."). Subsection (2)(c) states that volunteers are covered if otherwise designated by statute. For example, the definition of employee regarding firefighters specifically includes volunteers:

"a person who is an enrolled member of a volunteer fire department." Section 39-71-118(1)(g), MCA. In contrast, the plain language as regards ambulance services does not include the word volunteer. Therefore, because volunteers are covered as employees only when specifically indicated as required by subsection (2)(c), volunteers involved in ambulance services are not considered employees.

¶18   In addition to the language regarding volunteers, the language regarding students also supports our interpretation by way of analogy. Subsection (9) specifically states that students of elementary, secondary, or postsecondary schools performing work-based learning who do not receive pay are considered volunteers. *See* § 39-71-118(9), MCA ("A student currently enrolled in an elementary, secondary, or postsecondary educational institution who is participating in work-based learning activities and who is paid wages by the educational institution or business partner is the employee of the entity that pays the student's wages for all purposes under this chapter. A student who is not paid wages by the business partner or the educational institution is a volunteer and is subject to the provisions of this chapter.").[1] Therefore, like volunteers, unpaid students learning skills in the work environment are also not considered employees for purposes of workers' compensation coverage. Similarly, EMT

---

[1]*See also* § 39-71-118(1)(c), MCA ("The term 'employee' or 'worker' means: . . . (c) a person who is receiving on-the-job vocational rehabilitation training or other on-the-job training under a state or federal vocational training program, whether or not under an appointment or contract of hire with an employer, as defined in this chapter, and, except as provided in subsection (9), whether or not receiving payment from a third party. However, this subsection does not apply to students enrolled in vocational training programs, as outlined in this subsection, while they are on the premises of a public school or community college.").

trainees who do not receive pay should not be considered employees.

¶19 Finally, the County cites to *Great W. Sugar Co. v. District Court for Thirteenth Judicial Dist.* (1980), 188 Mont. 1, 8, 610 P.2d 717, 720, in support of the position that workers' compensation statutes are to be broadly construed in order to find coverage. Specifically, the quotation from *Great W. Sugar* cited by the County, and by the District Court, reads:

> The drafters of the Workers' Compensation Act have been careful to include all possible contracts of employment within their provisions. See sections 39-71-401 to 39-71-405, incl., MCA. It is more nearly accurate to state that it is the public policy of this State to make certain that all forms of employment be subject to the Workers' Compensation Act.

*Great W. Sugar*, 188 Mont. at 8, 610 P.2d at 720. However, this quotation by its terms emphasizes "contracts of employment" and "all forms of employment." Given that the workers' compensation definition statute at issue here specifically excludes volunteers and unpaid students from its terms defining covered employees, we disagree that the generalized policy of finding coverage requires us to hold that an unpaid EMT trainee is considered an employee. Indeed, the record here supports the contrary conclusion. Heidi was not paid and she has no contract of employment. Therefore, we hold that unpaid EMT trainees required to participate in work-based learning activities on an ambulance are not included in the definition of an employee under § 39-71-118(1)(g), MCA. Accordingly, because Heidi was an unpaid EMT trainee on an ambulance, the District Court erred when it granted summary judgment to the County.

## IV. CONCLUSION

¶20     Because the District Court incorrectly determined that EMT trainees who do not receive pay are included within the definition of § 39-71-118(1)(g), MCA, we reverse and remand for further proceedings consistent with this Opinion.

                                            /S/ JAMES C. NELSON


We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE